**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY, an Ohio corporation, ) | |
| Plaintiff, ) | Case No.: 06-C-4554 |
| **v.** ) | Judge Wayne R. Andersen |
| BALLY TOTAL FITNESS HOLDING CORPORATION, ) | Magistrate Judge Martin C. Ashman |
| Defendant and Third-Party Plaintiff, ) | JURY TRIAL DEMANDED |
| **v.** ) | |
| RLI INSURANCE COMPANY; TRAVELERS INDEMNITY COMPANY (as successor-in-interest by merger to Gulf Insurance Company); FIREMAN'S FUND INSURANCE COMPANY; and ACE AMERICAN INSURANCE COMPANY, ) | |
| Third-Party Defendants. ) | |

## THIRD-PARTY COMPLAINT AND JURY DEMAND

Pursuant to Federal Rules of Civil Procedure 13(h) and 20(a), Defendant, Counter-Claimant, and Third-Party Plaintiff Bally Total Fitness Holding Corporation ("Bally"), by its undersigned attorneys, alleges for its Third-Party Complaint against Third-Party Defendants RLI Insurance Company ("RLI"), Travelers Indemnity Company ("Travelers") as successor-in-interest by merger to Gulf Insurance Company ("Gulf"), Fireman's Fund Insurance Company ("Fireman's Fund") and ACE American Insurance Company ("ACE") (collectively referred to herein as the "Excess Insurers") as follows:

### Nature of the Action

1. This third-party complaint arises from the Excess Insurers' attempt to avoid the contractual obligations they owe to Bally. The Excess Insurers sold insurance policies to

Bally for hundreds of thousands of dollars of premiums, but when Bally was exposed to the very sort of claims those policies expressly covered, the Excess Insurers claimed that the policies were void *ab initio* or subject to rescission. Bally seeks a declaratory judgment that the policies are valid, legal and binding obligations of the Excess Insurers.

2. In addition, Third-Party Defendant RLI has wrongfully failed to pay millions of dollars in covered loss during a period of financial hardship to Bally. RLI has improperly asserted numerous inapplicable policy exclusions and limitations, and has forced Bally to respond to a series of shifting and expanding information requests. At the same time, RLI has sought to forestall Bally from suing to recover the money it is owed by delivering empty assurances that RLI would honor its contractual obligations. RLI is currently in breach of its obligations to the tune of over $5,000,000, and that amount continues to increase. Accordingly, Bally seeks a declaration that RLI is obligated immediately to fund all amounts that Bally has tendered under the RLI policy, and that RLI must fund amounts that Bally tenders in the future until the full policy limit has been exhausted.

### The Parties

3. Bally is a Delaware corporation with its principal place of business in Chicago, Illinois. Bally is one of the largest commercial operators of fitness centers in the United States.

4. RLI is an Illinois corporation with its principal place of business in Peoria, Illinois. RLI issued to Bally a first layer of excess directors' and officers' liability insurance for the period June 30, 2002 to June 30, 2003.

5. Travelers is a Connecticut corporation with its principal place of business in Hartford, Connecticut, and is the successor-in-interest to Gulf as the result of a merger. Gulf issued to Bally a second layer of excess directors' and officers' liability insurance for the period June 30, 2002 to June 30, 2003.

6.      ACE is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.  ACE issued to Bally a third layer of excess directors' and officers' liability insurance for the period June 30, 2002 to June 30, 2003.

7.      Fireman's Fund is a California corporation with its principal place of business in Novato, California.  Fireman's Fund issued to Bally a fourth layer of excess directors' and officers' liability insurance for the period from June 30, 2002 to June 30, 2003.

**Jurisdiction and Venue**

8.      This Court has supplemental jurisdiction over the subject matter of this Third-Party Complaint, including Bally's claims against RLI, pursuant to 28 U.S.C. § 1367(a).  The claims in this Third-Party Complaint are so related to and intertwined with the claims at issue in the remainder of the case, over which the court has original jurisdiction under 28 U.S.C. § 1332, that they form part of the same case or controversy under Article III of the United States Constitution.

9.      This Court also has subject matter jurisdiction over Bally's third-party claims against Travelers, ACE, and Fireman's Fund pursuant to 28 U.S.C. § 1332.  Bally, on the one hand, and Travelers, ACE, and Fireman's Fund, on the other, are citizens of different States, and the amount in controversy exceeds $75,000.

10.     Venue is proper under 28 U.S.C. § 1391(2) and (3).  A substantial part of the events giving rise to Bally's third-party claims against the Excess Insurers occurred in the Northern District of Illinois.  In addition, the Excess Insurers do substantial business in the state of Illinois and are subject to personal jurisdiction in the Northern District of Illinois.

**Factual Allegations**

**The 02/03 Excess Policies**

11.     RLI issued to Bally a first-layer excess directors' and officers' liability insurance policy effective for the period June 30, 2002 to June 30, 2003 (the "02/03 RLI

3

Policy"). The 02/03 RLI Policy has an aggregate limit of $10,000,000, excess of

$10,000,000 in underlying insurance provided by GAIC (the "02/03 GAIC Primary Policy").

True and correct copies of the 02/03 GAIC Primary Policy and the 02/03 RLI Policy are

attached as Exhibits A and B, respectively. The 02/03 RLI Policy provides that its coverage

shall apply "in conformance with the terms and conditions of the Primary Policy." (02/03

RLI Policy ¶ 1). "Primary Policy" refers to the 02/03 GAIC Primary Policy, Policy Number

DOL5741464, which was also effective for the period June 30, 2002 through June 30, 2003.

(02/03 RLI Policy, Declarations Item 4(A)).

      12.    Gulf issued to Bally a second-layer excess directors' and officers' liability

insurance policy effective for the period June 30, 2002 to June 30, 2003 (the "02/03 Gulf

Policy"). The 02/03 Gulf Policy has an aggregate limit of $10,000,000, excess of the

$20,000,000 in underlying insurance provided by GAIC and RLI. A true and correct copy of

the 02/03 Gulf Policy is attached as Exhibit C. The 02/03 Gulf Policy provides that its

coverage shall apply "pursuant to the Insuring Clause(s) set forth in the Underlying

Insurance, subject to: A. the terms and conditions of the Underlying Insurance as in effect on

the Policy Inception Date; . . ." (02/03 Gulf Policy § I). "Underlying Insurance" is defined as

the 02/03 GAIC Primary Policy and the 02/03 RLI Policy. (02/03 Gulf Policy § II.A.5;

Declarations Item 4).

      13.    ACE issued to Bally a third-layer excess directors' and officers' liability

insurance policy effective for the period June 30, 2002 to June 30, 2003 (the "02/03 ACE

Policy"). The 02/03 ACE Policy has an aggregate limit of $10,000,000, excess of

$30,000,000 in underlying insurance provided by GAIC, RLI and Gulf. A true and correct

copy of the 02/03 ACE Policy is attached as Exhibit D. The 02/03 ACE policy provides that

its coverage shall apply "in accordance with the terms, definitions, conditions, exclusions and

limitations of the Followed Policy, except as otherwise provided herein." (02/03 ACE Policy

§ I).  The 02/03 ACE Policy defines the term "Followed Policy" as the 02/03 GAIC Primary

Policy.  (02/03 ACE Policy, Declarations Item 3).

      14.    Fireman's Fund issued to Bally a fourth-layer excess directors' and officers'

liability insurance policy effective for the period June 30, 2002 to June 30, 2003 (the "02/03

Fireman's Fund Policy").  The 02/03 Fireman's Fund Policy has an aggregate limit of

$10,000,000, excess of $40,000,000 in underlying insurance provided by GAIC, RLI, Gulf

and ACE.  A true and correct copy of the 02/03 Fireman's Fund Policy is attached as Exhibit

E.  The 02/03 Fireman's Fund policy provides that its coverage shall apply "in conformance

with the definitions, term, conditions, limitations, warranties and exclusions of the Primary

Policy, except as otherwise provided in the definition, terms, conditions, limitations,

warranties and exclusions in this Policy."  (02/03 Fireman's Fund Policy § I).  The 02/03

Fireman's Fund Policy defines the term "Primary Policy" as the 02/03 GAIC Primary Policy.

(02/03 Fireman's Fund Policy § III.D.; Declarations).

      15.    The 02/03 RLI Policy, the 02/03 Gulf Policy, the 02/03 ACE Policy, and the

02/03 Fireman's Fund Policy are collectively referred to herein as the "02/03 Excess

Policies."

      16.    Bally bought the 02/03 GAIC Primary Policy and the 02/03 Excess Policies to

obtain valuable protection for the company and its directors and officers in the event that they

were named in claims alleging violations of federal or state securities laws.

      17.    The Insuring Agreement of the 02/03 GAIC Primary Policy, which is

applicable to each of the 02/03 Excess Policies, reflects this bargained-for coverage.  In the

first paragraph of the Insuring Agreement, GAIC expressly agreed to cover Bally's officers

and directors for securities claims:  "The Insurer shall pay on behalf of the Insured Persons all

Loss which the Insured Persons shall be legally obligated to pay as a result of a Claim

(including an Employment Practices Claim *or a Securities Claim*) first made against the

5

Insured Persons during the Policy Period or the Discovery Period for a Wrongful Act,. . ."

(Ex. A § I.A., emphasis added).

18.     The Insuring Agreement goes on to extend the same critical protection to claims against Bally itself:  "The Insurer shall pay on behalf of the Insured Entity all Loss which the Insured Entity shall be legally obligated to pay *as a result of a Securities Claim* first made against the Insured Entity during the Policy Period or the Discovery Period for a Wrongful Act."  (*Id.* § I.C., emphasis added).

19.     "Securities Claim" is defined in the 02/03 GAIC Primary Policy, and therefore in the 02/03 Excess Policies, to include any claims related to the sale or purchase of Bally's securities, or any claims brought by any of Bally's securities holders with regard to their interests:

> "Securities Claim" shall mean any Claim (including a civil lawsuit or criminal proceeding brought by the Securities and Exchange Commission) made against an Insured alleging a violation of any law, regulation or rule, whether statutory or common law, which is:
>
> (1) brought by any person or entity alleging, arising out of, based upon or attributable to, in part or in whole, the: (a) purchase or sale of, or (b) offer or solicitation of an offer to purchase or sell, any securities of the Company, or
>
> (2) brought by a security holder of the Company, arising solely with respect to such security holder's interest in such securities of the Company, whether directly, by class action, or derivatively on behalf of the Company.

(*Id.,* § III.P).

20.     The term "Claim" is defined broadly to include any "written demand for monetary or non-monetary relief made against any Insured and reported to the Insurer" or "a civil, criminal, administrative or arbitration proceeding made against any Insured seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading, the return of an indictment, or the receipt or filing of notice of charges or similar document, including any proceeding initiated against any Insured before the Equal Employment Opportunity Commission or any similar governmental body."  (*Id.,* § III.A.(1)

6

& (2)).

21.     The policy defines "Loss" to include damages, settlements, and defense costs: "'Loss' shall mean compensatory damages, punitive or exemplary damages, the multiple portion of any multiplied damage award, settlements and Costs of Defense . . . ."  (*Id.*, § III.L.).

22.     "Costs of Defense" are defined as "reasonable and necessary legal fees, costs and expenses incurred in the Investigation, defense or appeal of any Claim . . ."  (*Id.*, § III.D.).

**The 2002 Proposal Form**

23.     In connection with obtaining the 02/03 GAIC Primary Policy, Bally submitted a Publicly Traded Corporation Renewal Proposal Form (the "2002 Proposal Form") to GAIC. A true and correct copy of the 2002 Proposal Form is attached hereto as Exhibit F.

24.     The 2002 Proposal Form is a form prepared by GAIC, on GAIC's corporate letterhead.

25.     In its Proposal Form, GAIC included a pre-printed statement that certain documents, including past financial statements and SEC filings of the applicant company, were *actually* "attached to and made part of the Proposal Form."  The 2002 Proposal Form includes this boilerplate recitation.

26.     The completed 2002 Proposal Form has no financial statements or SEC filings attached.

27.     Upon information and belief, none of the Excess Insurers relied on the Bally financial statements and SEC filings described in the Proposal Form as attached thereto in agreeing to issue their policies.

28.     Upon information and belief, the Bally financial statements and SEC filings described in the Proposal Form as attached thereto did not materially affect any of the Excess

Insurers' decision to issue any of the 02/03 Excess Policies, nor did those documents materially affect the hazard assumed by the Excess Insurers in issuing in those policies.

29.     The 2002 Proposal Form provides increased protection, over and above the minimum standards established by Illinois statute, against rescission of the Policies.  For example, GAIC included a "Best Knowledge Clause" in the 2002 Proposal Form stating that:

> The undersigned Officer of the Company declares that to the best of his or her knowledge the statements set forth herein are true and correct and that all reasonable efforts have been made to obtain sufficient information from each and every Director and Officer proposed for this insurance to facilitate the proper and accurate completion of this Proposal Form.

30.     GAIC also included a "Severability Clause" in the 2002 Proposal Form providing that:

> any misstatement or omission in this Proposal Form or information provided herewith in respect of a specific Wrongful Act by a particular Director or Officer or his or her cognizance of any matter which he or she has reason to believe might afford grounds for a future Claim against him or her shall not be imputed to any other Director or Officer for purposes of determining the validity of this Policy as to such other Director or Officer.

31.     Neither the 2002 Proposal Form nor any information provided with the 2002 Proposal Form includes any misstatement or omission sufficient to void the Policies pursuant to the Knowledge and Belief Clause and the Severability Clause GAIC drafted.

**The Underlying Claims**

32.     Bally and its directors and officers have been the target of several claims of exactly the type that the Excess Insurers drafted, marketed and sold the 02/03 Excess Policies to cover.

33.     Bally and certain of its directors and officers were named as defendants, or have become the subject of governmental investigations, in proceedings that include but are not limited to the following (collectively, the "Underlying Claims"):

(i)     *In re Bally Total Fitness Sec. Litig.*, No. 04 C 3530 (N.D. Ill. 2004);

(ii)    *Levine v. Bally Total Fitness Holding Corp., et al.*, No. 06 C 1437 (N.D. Ill. 2006);

(iii) *Berra, et al. v. Toback, et al.*, No. 04 CH 09132 (Cook Co. Cir. Ct. 2004).

(iv) *Schachter, et al. v. Toback, et al.*, No. 04 CH 09131 (Cook Co. Cir. Ct. 2004);

(v) *Said, et al. v. Toback, et al.*, No. 05 C 1981 (N.D. Ill. 2005);

(vi) *Garrison, et al. v. Bally Total Fitness Holding Corp.*, et al., CV 04 1331 (D. Ore. 2004);

(vii) *Fit Tech Inc., et al. v. Bally Total Fitness Holding Corp.*, Nos. 03-CV-10295 (D. Mass. 2003) and 05-CV-10471 MEL (D. Mass. 2005);

(viii) *Butcher v. Bally Total Fitness Corp., et al.*, Case No. CV 02 458434 (Ct. of Comm. Pleas of Cuyahoga Co. Ohio 2002) and related arbitration;

(ix) an investigation by the Securities and Exchange Commission, in which the SEC issued a formal Order Directing Private Investigation and Designating Officers to Take to Take Testimony on May 27, 2004;

(x) an investigation by the United States Attorney for the District of Columbia; and

(xi) a demand made by certain shareholders upon Bally to bring actions or seek remedies against other parties alleged to be responsible for accounting errors in connection with Bally's financial statements.

(xii) *Levine v. Bally Total Fitness Holding Corp., et al.*, Case No. 2007 L 004280 (Cook Co. Cir. Ct. 2007).

34.     Each of the Underlying Claims constitutes a "Securities Claim" or a "Claim" as those terms are defined in the 02/03 GAIC Primary Policy and the 02/03 Excess Policies.

35.     Bally has defended each of the Underlying Claims, successfully obtaining the dismissal of several of those actions.  None of the Underlying Claims has resulted in a judicial finding of any wrongdoing on Bally's part.

36.     Bally has incurred substantial expenses in connection with the Underlying Claims, and will continue to do so until all of the claims are resolved.  The expenses Bally incurred to defend, investigate, and settle the Underlying Claims are "Costs of Defense" and "Loss," as those terms are defined in the 02/03 GAIC Primary Policy and the 02/03 Excess

Policies.

**<u>Instead Of Honoring Their Contractual Obligations, The Excess Insurers Purport to
Rescind the Policies And Sue Bally</u>**

37.     Faced with the Underlying Claims, Bally turned to its insurers for coverage.
Bally notified GAIC and the Excess Insurers of the facts and circumstances that gave rise to
the Underlying Claims on June 26, 2003, and has given GAIC and the Excess Insurers notice
of other individual Underlying Claims in due course.

38.     On July 14, 2005, RLI sent Bally a letter in which RLI claimed that it had
received and relied upon the 2002 Proposal Form and Bally's financial statements in issuing
the 02/03 RLI Policy, and asserted that the 02/03 RLI Policy was therefore void *ab initio* or
subject to rescission.

39.     On November 9, 2005, Travelers sent Bally a letter purporting to rescind the
02/03 Gulf Policy.  On the same date, ACE sent Bally a letter purporting to rescind the 02/03
ACE Policy.

40.     A day after Travelers and ACE sent letters to Bally purporting to unilaterally
rescind their policies, those insurers jointly filed suit in the Northern District of Illinois
seeking, among other things, a declaration that their policies were void *ab initio* or voidable
and of no force and effect.  That lawsuit was captioned *Travelers Indemnity Co., et al. v.
Bally Total Fitness Holding Corp., et al.*, No. 05 C 6441 (N.D. Ill. 2005).

41.     On December 16, 2005, Fireman's Fund intervened in the *Travelers* lawsuit,
seeking the same relief with respect to the 02/03 Fireman's Fund Policy.

42.     On April 6, 2006, RLI filed a one-count complaint in Illinois state court
seeking to rescind the 02/03 RLI Policy.  That lawsuit was captioned *RLI Insurance Co. v.
Bally Total Fitness Holding Corp., et al.*,  No. 06 CH 06892 (Cook Co. Cir. Ct. 2006).

43.     If the Excess Insurers were permitted to rescind policies specifically drafted to
cover securities claims based on alleged misrepresentations at issue in the Underlying

Claims, then the insurance coverage the Excess Insurers sold to Bally for hundreds of thousands of dollars was illusory.

44.     Bally moved to stay or dismiss without prejudice each of the Excess Insurers' complaints due to the substantial overlap of between the Underlying Claims and the Excess Insurers' declaratory judgment actions. Bally's motion to dismiss the *Travelers* lawsuit was granted on September 11, 2006. Bally's motion to dismiss the *RLI* lawsuit was granted on November 16, 2006.

**RLI Refuses To Advance Millions Of Dollars Of Covered Loss Under Its Policy**

45.     After providing RLI with its initial notice letter in June of 2003, Bally invited RLI to participate in its defense of the Underlying Claims. During the defense of those cases RLI was invited to participate, and did participate, in multiple conference calls with Bally's defense counsel regarding the factual and legal bases for the claims.

46.     In April 2006, Bally invited RLI (and its other insurers) to participate in a mediation session with plaintiffs in one of the largest of the Underlying Claims. RLI sent a senior member of its management and its outside counsel to attend the mediation, but— unbeknownst to Bally or any of the other participants—as RLI representatives were sitting in the mediation, RLI was filing a lawsuit against Bally in Illinois state court seeking to rescind the 02/03 RLI Policy. RLI did not disclose that it had filed the lawsuit until *after* the mediation session concluded.

47.     Despite RLI's decision to sue at the very moment its representatives were sitting in a conference room with Bally's representatives to ostensibly participate in efforts to settle an Underlying Claim, Bally continued to make information regarding the defense of the Underlying Claims available to RLI through written presentations and analyses, copies of pleadings, and direct access to Bally's counsel.

48.     Notwithstanding Bally's efforts, RLI took the position that it had not received

sufficient information to evaluate the merits of the Underlying Claims.

49.     On May 19, 2006, Bally advised RLI that the limit of the GAIC Primary

Policy was nearing exhaustion, and that RLI would soon be responsible for funding Bally's

ongoing defense.  On June 14, 2006, RLI responded by questioning the payments GAIC had

made and demanding additional information from Bally.

50.     In response, Bally forwarded RLI copies of all invoices it had submitted to

GAIC, as well as documentation showing GAIC's reimbursements.

51.     On July 11, 2006, Bally informed RLI that it had submitted invoices to GAIC

sufficient to exhaust the remaining portion of the GAIC policy limit.

52.     On August 7, 2006, Bally provided written notice to RLI that the GAIC policy

limit had been exhausted, and tendered to RLI invoices totaling over $1,100,000 for

reimbursement as Costs of Defense.

53.     Over the next seven months, Bally tendered to RLI additional invoices

totaling over $4,000,000 for reimbursement as Costs of Defense.

54.     On October 4, 2006, RLI sent Bally a letter asserting that the existence of its

then-pending rescission lawsuit entitled RLI to withhold payment for Costs of Defense.

55.     RLI's rescission lawsuit was dismissed on November 16, 2006.

56.     On November 29, 2006, a senior RLI executive spoke directly with Bally's

General Counsel via telephone regarding the millions of dollars of invoices that Bally had

tendered.  The RLI executive stated that RLI understood its need to provide a defense to

Bally, and told Bally's General Counsel not to file suit over RLI's nonpayment, because RLI

would start funding Bally's Costs of Defense.

57.     In the months following RLI's assurances, Bally continued to provide

information to RLI concerning the Underlying Claims, continued to make its counsel

available to RLI for discussions and to answer questions, and continued to supply

12

documentation and answer questions regarding its Costs of Defense.

58.     Despite Bally's repeated requests, RLI has not paid a single dollar of Bally's Costs of Defense.

## COUNT I—Declaratory Judgment Regarding Validity of The 02/03 Excess Policies

59.     Bally realleges and incorporates by reference each of its allegations in paragraphs 1 through 58, inclusive.

60.     Bally timely paid all premiums for the 02/03 Excess Policies.

61.     The Excess Insurers executed the 02/03 Excess Policies and issued each of those policies to Bally.

62.     There is an actual case or controversy between Bally and the Excess Insurers with respect to the validity of each the 02/03 Excess Policies, based on the Excess Insurers' assertion that those policies are void *ab initio* or subject to rescission.

63.     Pursuant to 28 U.S.C. § 2201, Bally seeks a declaratory judgment that the 02/03 Excess Policies are valid, legal and binding obligations of each Excess Insurer who issued one of those policies and not void *ab initio* or subject to rescission.

WHEREFORE Bally respectfully requests that this Court enter a judgment in its favor and against the Excess Insurers declaring that the 02/03 Excess Policies are valid, legal and binding obligations of the Excess Insurers and not void *ab initio* or subject to rescission, and granting Bally any further relief this Court deems proper.

## COUNT II—Declaration Of Coverage Regarding The Underlying Claims Against Third-Party Defendant RLI

64.     Bally realleges and incorporates by reference each of its allegations in paragraphs 1 through 63, inclusive.

65.     Bally has satisfied its obligations under the 02/03 RLI Policy.

66.     The policy limit of the 02/03 GAIC Primary Policy has been exhausted by the payment of covered Loss, and all other conditions precedent to trigger coverage under the

02/03 RLI Policy have been met.

67.     The 02/03 GAIC Primary Policy, and by extension the 02/03 RLI Policy,

obligates Bally's insurers to advance Costs of Defense for covered Claims:

> The Insurer shall advance Costs of Defense prior to the final disposition of any
> Claim, provided such Claim is covered by this Policy.  Any advancement shall
> be on the condition that:
>
> (1)  the appropriate retention has been satisfied, provided, however, this
> condition shall not apply in the event of the Financial Insolvency of the
> Policy;
>
> (2)  any amounts advanced by the Insurer shall serve to reduce the Limit of
> Liability stated in Item 3 of the Declarations to the extent they are not in fact
> repaid;
>
> (3)  the Company and Insured Persons and the Insurer have agreed upon the
> portion of the Costs of Defense attributable to covered Claims against the
> Insureds; and
>
> (4)  in the event it is finally established that the Insurer has no liability under
> the Policy for such Claim, the Company and Insured Persons will repay the
> Insurer upon demand all Costs of Defense advanced by virtue of this
> provision.

(Ex. A, § VII.E.).

68.     There are no unperformed conditions precedent to Bally's recovery under the

02/03 RLI Policy or to RLI's obligation to advance Costs of Defense.  All such conditions

precedent have been met.  To the extent any such conditions precedent have not been met,

they have been excused, waived, or RLI has not been prejudiced by their non-occurrence.

69.     Bally is entitled to coverage under the 02/03 RLI Policy for all amounts it has

tendered to RLI with respect to the Underlying Claims.

70.     RLI has not paid Bally any of the amounts tendered to RLI with respect to the

Underlying Claims.  Bally has tendered over $5,000,000 to RLI, a total that will continue to

mount until the Underlying Claims are concluded.

71.     There is an actual case or controversy between Bally and RLI with respect to

the existence of coverage under the 02/03 RLI Policy for the Underlying Claims, based on

RLI's failure to reimburse Bally for any portion of the over $5,000,000 that Bally has tendered to RLI, and RLI's assertion that various policy provisions preclude or limit the scope of coverage for the amounts Bally has tendered.

WHEREFORE, Bally respectfully requests that this Court enter a judgment in its favor and against RLI declaring (a) that all amounts Bally has tendered to RLI under the 02/03 RLI Policy, and all amounts previously tendered to GAIC under the 02/03 GAIC Primary Policy, constitute covered Loss; (b) that RLI is obligated to immediately fund all outstanding amounts pursuant to the terms of the 02/03 RLI Policy and to fund future costs as they are incurred; (c) awarding Bally its costs and reasonable attorneys' fees in connection with this action; and (d) granting Bally any further relief this Court deems proper.

Dated: June 11, 2007

                                              /s/ William T. Pruitt
                                              Michael P. Foradas, P.C.
                                              Nader R. Boulos
                                              William T. Pruitt
                                              Kirkland & Ellis LLP
                                              200 East Randolph Drive
                                              Chicago, Illinois 60601
                                              Phone: (312) 861-2000
                                              Fax:    (312) 861-2200

                                              Attorneys for Defendant/Counter-
                                              Plaintiff Bally Total Fitness Holding
                                              Corporation

**JURY DEMAND**

Bally demands a trial by jury.

by: /s/_____William T. Pruitt_____
Michael P. Foradas, P.C.
Nader R. Boulos
William T. Pruitt
Kirkland & Ellis LLP
200 East Randolph
Chicago, Illinois  60601
Ph.: (312) 861-2000
Fax:  (312) 861-2200

Attorneys for Defendant/Counter-Plaintiff
Bally Total Fitness Holding Corporation

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of June, 2007, I did cause a true and correct copy

of the foregoing <u>THIRD-PARTY COMPLAINT AND JURY DEMAND</u> to be served upon

the following:


Leonard S. Surdyk
SURDYK & BAKER
225 West Washington, Suite 2200
Chicago, IL 60606
**Via Electronic Mail**

Robert Bruce Baker
SURDYK & BAKER
225 West Washington, Suite 2200
Chicago, IL 60606
**Via Electronic Mail**

**Counsel for Great American Insurance
Company**


     /s/  William T. Pruitt          
               William T. Pruitt