**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY, an Ohio corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 06-C-4554 |
| BALLY TOTAL FITNESS HOLDING CORPORATION, | ) ) ) | Judge Wayne R. Andersen Magistrate Judge Martin C. Ashman |
| Defendant and Third-Party Plaintiff | ) ) | |
| v. | ) ) | |
| RLI INSURANCE COMPANY; TRAVELERS INDEMNITY COMPANY (as successor-in-interest by merger to Gulf Insurance Company); FIREMAN'S FUND INSURANCE COMPANY; and ACE INSURANCE COMPANY; | ) ) ) ) ) ) | |
| Third-Party Defendants | ) ) | |
| FIREMAN'S FUND INSURANCE COMPANY, | ) ) | |
| Third-Party Defendant and Counterclaimant | ) ) ) | |
| v. | ) ) | |
| HOLIDAY UNIVERSAL, INC., GEORGE N. ARONOFF, PAUL TOBACK, JOHN H. DWYER, LEE S. HILLMAN, STEPHEN C. SWID, JAMES McANALLY, J. KENNETH LOOLOIAN, LIZA M. WALSH, ANNIE P. LEWIS, as Executor of the Estate of AUBREY C. LEWIS, Deceased, THEODORE NONCEK, GEOFF SCHEITLIN, JOHN H. WILDMAN, JOHN W. ROGERS, JR., and MARTIN E. FRANKLIN, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Additional Defendants on Counterclaim | ) ) ) | |

**DEFENDANTS' CONSOLIDATED ANSWER AND INDIVIDUAL DEFENDANTS'
AFFIRMATIVE DEFENSE TO THE COUNTERCLAIMS OF THIRD-PARTY
DEFENDANT AND COUNTER-PLAINTIFF FIREMAN'S FUND INSURANCE
COMPANY**

Defendant Bally Total Fitness Holding Corporation ("Bally"), Holiday Universal, Inc.
(n/k/a/ Bally Total Fitness Of The Mid Atlantic, Inc.), George N. Aronoff, Paul Toback, John W.
Dwyer, Lee S. Hillman, Stephen Swid, James McAnally, J. Kenneth Looloian, Liza M.Walsh,
Annie P. Lewis , (as Executor of The Estate of Aubrey Lewis, deceased), Theodore Noncek,
Geoff Scheitlin, John H. Wildman, John W. Rogers, Jr., and Martin E. Franklin, hereinafter
referred to as "Defendants," by their undersigned attorneys, answer the Counterclaims of
Fireman's Fund Insurance Company ("Fireman's Fund"), as follows:

**Nature of the Action**

1.      This is an action to rescind an excess directors and officers liability insurance policy
Fireman's Fund issued to Bally for the period effective from June 30, 2002 to June 30,
2003, as well as an excess renewal policy Fireman's Fund issued to Bally for the period
effective from June 30, 2003 to June 30, 2004. Fireman's Fund underwrote and issued the
aforementioned policies in reliance upon applications from Bally that included, among
other things, quarterly and annual reports and accompanying financial statements filed by
Bally with the United States Securities and Exchange Commission (the "SEC"). The
reports and financial statements purported to provide Fireman's Fund with accurate
information on various subjects including, without limitation, Bally's finances and
operating results and the integrity of the company's accounting and disclosure practices.

**ANSWER:**

Defendants admit that Fireman's Fund issued excess directors' and officers' liability

insurance policies to Bally that Fireman's Fund has purported to rescind ("the Policies") and that

Fireman's Fund asserts the counterclaims in the manner described.  Defendants lack sufficient

knowledge and information to admit or deny that Fireman's Fund underwrote and issued the

Policies in reliance upon applications submitted to it by or on behalf of Bally and therefore deny

the same.  Defendants deny all remaining allegations in paragraph 1.

2.      Unbeknownst to Fireman's Fund, the financial information it received in connection with
Bally's applications for insurance was materially false and misleading and seriously
misstated Bally's financial condition. On November 30, 2005, Bally restated its
consolidated financial statements for the years 2000 through 2003. According to Bally,
the restatement was necessary because the accounting procedures it had utilized in those
years improperly overstated revenue and understated expenses. The financial statements
for 2001 and 2002, which required restatement, comprised the very financial information

1

on which Fireman's Fund relied in issuing its policies to Bally. The restatement shows that the financial statements for 2001 and 2002 that Fireman's Fund relied upon grossly overstated Bally's financial condition, and that, contrary to the representations in the original 2001 and 2002 financial statements, Bally's accounting practices were not in accordance with Generally Accepted Accounting Principles ("GAAP").

**ANSWER:**

Defendants deny that information in connection with Bally's applications for insurance was materially false and misleading or seriously misstated Bally's financial condition. Defendants admit that, following the issuance of the Policy, Bally issued a Form 10-K on November 30, 2005. Defendants respectfully refer to the referenced document for a complete and accurate recitation of the information and financial data paraphrased in paragraph 2. Defendants deny any remaining allegations in paragraph 2.

3.     Fireman's Fund would not have issued the policies had it known that the applications it received materially misrepresented Bally's financial condition and that Bally's accounting practices were not in accordance with GAAP. Accordingly, Fireman's Fund has notified Bally that it is rescinding its policies and tendering to Bally all premiums paid therefore. Fireman's Fund now brings this action seeking a declaration, pursuant to 28 U.S.C. § 2201, that its policies are void ab initio, and a judgment rescinding those policies. In the alternative, Fireman's Fund seeks a declaration that certain exclusions and/or conditions in the renewal policy it issued to Bally for the 2003/2004 period bar coverage under that policy for each of the claims defendant has tendered to Fireman's Fund.

**ANSWER:**

Defendants lack sufficient knowledge and information to admit or deny that Fireman's Fund would not have issued the policies had Bally's financial statements contained different information, and therefore deny the the same. Defendants admit that Fireman's Fund has notified Bally that it is rescinding the Policies and that it now seeks declaratory judgment to rescind the Policy or, in the alternative, bar coverage in the manner described. Defendants deny the remaining allegations in paragraph 3.

**The Parties**

4.     Plaintiff Fireman's Fund is a California corporation with its principal place of business in Novato, California.

**ANSWER:**

Defendants admit the allegations in paragraph 4.

2

5.  Defendant Bally is a Delaware corporation with its principal place of business in Chicago, Illinois.

**ANSWER:**

Defendant Bally admits the allegations in paragraph 5. The remaining defendants lack sufficient knowledge and information to admit or deny the allegations in paragraph 5.

6.  Defendant Holiday is a Delaware corporation with its principal place of business in Chicago, Illinois, and is a direct or indirect subsidiary of Bally.

**ANSWER:**

Defendant Holiday admits the allegations in paragraph 6. The remaining defendants lack sufficient knowledge and information to admit or deny the allegations in paragraph 6.

7.  Upon information and belief, defendant George N. Aronoff ("Aronoff") is a citizen of Ohio, and was a director of Bally from 2001 to 2003.

**ANSWER:**

Defendant Aronoff denies that he is a citizen of Ohio. Defendant Aronoff admits that he was a director of Bally from August 24, 2001 until on or about March 19, 2003. Defendant Aronoff further answers that he is a citizen of Florida. The remaining defendants lack sufficient knowledge and information to admit or deny the allegations in paragraph 7.

8.  On information and belief, defendant Paul Toback ("Toback") is a citizen of Illinois, has been Chairman of Bally since 2003, and has served as President, Chief Executive Officer, and a director of Bally since 2002.

**ANSWER:**

Defendant Toback admits the allegations in paragraph 8. The remaining defendants lack sufficient knowledge and information to admit or deny the allegations in paragraph 8.

9.  On information and belief, defendant John W. Dwyer ("Dwyer") is a citizen of Illinois, was Executive Vice President and Chief Financial Officer of Bally between 1996 and 2004, and served as a director of Bally prior to and until 2004.

**ANSWER:**

Defendant Dwyer admits the allegations in paragraph 9. The remaining defendants lack sufficient knowledge and information to admit or deny the allegations in paragraph 9.

10.     On information and belief, defendant Lee S. Hillman ("Hillman") is a citizen of Illinois, was Chairman of Bally from 2000 to 2003, President and Chief Executive Officer of Bally from 1996 to 2003, and a director of Bally from 1992 to 2003.

**ANSWER:**

Defendant Hillman admits the allegations in paragraph 10. The remaining defendants lack sufficient knowledge and information to admit or deny the allegations in paragraph 10.

11.     On information and belief, defendant Stephen C. Swid ("Swid") is a citizen of New York, and has been a director of Bally since 2003.

**ANSWER:**

Defendant Swid admits the allegations in paragraph 11. The remaining defendants lack sufficient knowledge and information to admit or deny the allegations in paragraph 11.

12.     On information and belief, defendant James McAnally ("McAnally") is a citizen of New Jersey, and at times relevant hereto was a director of Bally.

**ANSWER:**

Defendant McAnally admits the allegations in paragraph 12. The remaining defendants lack sufficient knowledge and information to admit or deny the allegations in paragraph 12.

13.     On information and belief, defendant J. Kenneth Looloian ("Looloian") is a citizen of New Jersey, and at times relevant hereto was a director of Bally.

**ANSWER:**

Defendant Looloian admits the allegations in paragraph 13. The remaining defendants lack sufficient knowledge and information to admit or deny the allegations in paragraph 13.

14.     On information and belief, defendant Liza M. Walsh ("Walsh") is a citizen of New Jersey, and at times relevant hereto was a director of Bally.

**ANSWER:**

Defendant Walsh admits the allegations in paragraph 14. The remaining defendants lack sufficient knowledge and information to admit or deny the allegations in paragraph 14.

15.     On information and belief, defendant Annie P. Lewis ("Lewis") is a citizen of New Jersey, and is the Executor of the Estate of Aubrey C. Lewis, deceased, who at times relevant hereto was a director of Bally.

**ANSWER:**

Defendant Lewis admits the allegations in paragraph 15.  The remaining defendants lack sufficient knowledge and information to admit or deny the allegations in paragraph 15.

16.     On information and belief, defendant Theodore Noncek ("Noncek") is a citizen of Illinois, and was Vice President and Controller of Bally from 2000 until February 2005.

**ANSWER:**

Defendant Noncek admits the allegations in paragraph 16.  The remaining defendants lack sufficient knowledge and information to admit or deny the allegations in paragraph 16.

17.     On information and belief, defendant John H. Wildman ("Wildman") is a citizen of Illinois, and is currently an officer of Bally.

**ANSWER:**

Defendant Wildman admits the allegations in paragraph 17.  The remaining defendants lack sufficient knowledge and information to admit or deny the allegations in paragraph 17.

18.     On information and belief, defendant John W. Rogers, Jr. ("Rogers") is a citizen of Illinois, and at times relevant hereto was a director of Bally.

**ANSWER:**

Defendant Rogers admits the allegations in paragraph 18.  The remaining defendants lack sufficient knowledge and information to admit or deny the allegations in paragraph 18.

19.     On information and belief, defendant Martin E. Franklin ("Franklin") is a citizen of New York, and at times relevant hereto was a director of Bally.

**ANSWER:**

Defendant Franklin admits the allegations in paragraph 19.  The remaining defendants lack sufficient knowledge and information to admit or deny the allegations in paragraph 19.

20.     On information and belief, defendant Geoff Scheitlin ("Scheitlin") is a citizen of Illinois, served as Bally's Controller from 1997 to 2001, and was Vice President and Treasurer of Bally until 2005.

**ANSWER**

Defendant Scheitlin admits the allegations in paragraph 20.  The remaining defendants lack sufficient knowledge and information to admit or deny the allegations in paragraph 20.

### Jurisdiction and Venue

21.     The court has subject matter jurisdiction over Fireman's Fund's counterclaim against the Individual Insureds pursuant to 28 U.S.C. §1332(a)(1) in that Fireman's Fund is a citizen of California and the Individual Insureds are citizens of various states other than California and the amount in controversy exceeds the sum or value of $75,000.

**ANSWER:**

        Paragraph 21 contains a legal conclusion to which no response is required.

22.     This Court also has supplemental jurisdiction of the subject matter of Fireman's Fund's counterclaim against the Individual Insureds pursuant to 28 U.S.C. §1367(a). The counterclaim against the Individual Insureds is so related and intertwined with the claims at issue in the remainder of the case that it forms part of the same case or controversy under Article III of the United States Constitution.

**ANSWER:**

        Paragraph 22 contains a legal conclusion to which no response is required.

23.     This District is a proper venue pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to this action took place in this District.

**ANSWER:**

        Paragraph 23 contains a legal conclusion to which no response is required.

### Underwriting of the 2002-2003 Fireman's Fund Excess Policy

24.     Fireman's Fund underwrote and issued to Bally Excess Directors & Officers and Corporate Reimbursement Policy No. CXD-000-9692-9104 for the claims-made period effective from June 30, 2002 to June 30, 2003 (the "Fireman's Fund 02/03 Excess Policy"). A true and correct copy of the Fireman's Fund 02/03 Excess Policy (with the application proposal form, but without attachments to that form) is attached hereto as Exhibit A.

**ANSWER:**

        Defendants admit that Fireman's Fund issued to Bally the Excess Directors' and Officers'

Corporate Reimbursement Policy No. CXD-000-9692-9104 for the period June 30, 2002 to June

30, 2003.  Defendants also admit that a copy of the Fireman's Fund 02/03 Excess Policy was

attached to Fireman's Fund pleading as Exhibit A.

25.     The Fireman's Fund 02/03 Excess Policy has an aggregate limit of liability of $10 million, excess of $40 million of underlying insurance provided by four other policies, specifically: (i) a $10 million primary policy issued by Great American Insurance Company (the "GAIC 02/03 Primary Policy"); (ii) a $10 million excess policy issued by

RLI Insurance Company (the "RLI 02/03 Excess Policy"); (iii) a $10 million excess policy issued by Gulf (the "Gulf 02/03 Excess Policy"); and (iv) a $10 million excess policy issued by ACE (the "ACE 02/03 Excess Policy").

**ANSWER:**

Defendants admit the allegations in paragraph 25.

26. Fireman's Fund underwrote the Fireman's Fund 02/03 Excess Policy only after receiving from Bally a completed Publicly Traded Corporation Renewal Proposal Form, dated April 12, 2002, and signed by Dwyer, (the "2002 Proposal Form"). The 2002 Proposal Form had been provided to Bally in blank by Great American Insurance Company ("GAIC") in connection with its underwriting of the GAIC 02/03 Primary Policy.

**ANSWER:**

Defendants admit that the 2002 Proposal Form is dated April 12, 2002 and that it was signed by Counterclaim Defendant Dwyer. Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in paragraph 26 and therefore deny the same.

27. The 2002 Proposal Form stated that copies of all of the following Bally documents were deemed attached to and made a part of it:

    i.    Annual Report (Complete Audited Financial Statement), for the most recent three (3) years.

    ii.    Latest Interim Financial Statement.

    iii.    The most recent 10K, 10Q and any other documentation filed with the SEC.

    iv.    The Notice of Stockholders and Proxy Statement for the last scheduled meeting.

    v.    If applicable, the most recent year-end and quarterly Convention Statements.

    vi.    If applicable, the most recent year-end and quarterly Call Reports.

    vii.    If applicable, the most recent year-end and quarterly Call Reports.

**ANSWER:**

Defendants deny that the Proposal Form states that copies of the listed documents were "*deemed* attached to and made part of the Proposal Form." The Proposal Form states that each

of the documents "*is* attached to and made part of the Proposal Form." However, no documents

were in fact attached to the Proposal Forms, as reflected by exhibits submitted with Fireman's

Fund Counterclaims, none of which include the referenced documents. Defendants deny any

remaining allegations in paragraph 27.

28. The 2002 Proposal Form thus incorporated, among other things, Bally's Annual Report for the years 1999, 2000, and 2001, as well as Bally's then most recent Form 10-K, Interim Financial Statement, and Form 10-Q. Under the express terms of the 2002 Proposal Form, Bally and each of the Individual Insureds agreed: (i) that the statements and information contained in the 2002 Proposal Form, including the financial statements and other materials incorporated therein, were their representations and the basis for the Fireman's Fund 02/03 Excess Policy; (ii) that those representations were material to the risk assumed by Fireman's Fund; and (iii) that the Fireman's Fund 02/03 Excess Policy would be issued in reliance upon the truth of such representations.

**ANSWER:**

Defendants deny the allegations in paragraph 28.

29. The 2002 Proposal Form also contained the following statements attesting to the accuracy of the information submitted to Fireman's Fund in support of Bally's application for insurance coverage:

The undersigned Officer of the Company declares that to the best of his or her knowledge the statements set forth herein are true and correct and that reasonable efforts have been made to obtain sufficient information from each and every Director and Officer proposed for this insurance to facilitate the proper and accurate completion of this Proposal Form. The undersigned further agrees that if any significant adverse change in the condition of the applicant is discovered between the date of this Proposal Form and the effective date of the Policy, which would render this Proposal Form inaccurate or incomplete, notice of such change will be reported in writing to the Insurer immediately. The signing of this Proposal Form does not bind the undersigned to purchase the insurance.

**ANSWER:**

Defendants admit that paragraph 29 quotes a portion of the 2002 Proposal Form, and

respectfully refer to the Proposal Form for a complete and accurate recitation of the contents of

that document. Defendants deny any remaining allegation in paragraph 29.

30. In addition, the Fireman's Fund 02/03 Excess Policy, by its express terms, is subject to all of the terms and conditions of the GAIC 02/03 Primary Policy. The Fireman's Fund 02/03 Excess Policy thus incorporates Section IX.B of the GAIC 02/03 Primary Policy, which states:

It is agreed by the Company and the Insured Persons that the particulars and statements contained in the Proposal Forms and any information provided therewith (which shall be on file with the Insurer and be deemed attached hereto as if physically attached hereto) are the basis of this Policy and are to be considered as incorporated in and constituting a part of this Policy. It is further agreed by the Company and the Directors and Officers that the statements in the Proposal Forms or in any information provided therewith are their representations, that they are material and that this Policy is issued in reliance upon the truth of such representations; provided, however, that except for material facts or circumstances known to the person(s) who subscribed the Proposal Forms, any misstatement or omission in such Proposal Forms or information provided therewith in respect of a specific Wrongful Act by a particular Director or Officer or his cognizance of any matter which he has reason to suppose might afford grounds for a future Claim against him shall not be imputed to any other Director or Officer for purposes of determining the validity of this Policy as to such other Director or Officer.

**ANSWER:**

Defendants admit that paragraph 30 quotes a portion of the GAIC 02/03 Primary Policy, and respectfully refer to the Fireman's Fund 02/03 Excess Policy and the GAIC 02/03 Primary Policy for a complete and accurate recitation of their terms and conditions. Defendants deny any and all remaining allegations in paragraph 30.

31.     In reliance upon the truth of the information Proposal Form, including the financial statements and other materials incorporated therein, Fireman's Fund issued the Fireman's Fund 02/03 Excess Policy.

**ANSWER:**

Defendants lack sufficient knowledge and information to admit or deny that Fireman's Fund issued the 02/03 Excess Policy in reliance on the 2002 Proposal form or any additional documents, and therefore deny the same.

**Underwriting of the 2003-2004 Fireman's Fund Renewal Policy**

32.     Prior to the expiration of the Fireman's Fund 02/03 Excess Policy, Bally requested that Fireman's Fund renew that policy for another year. In June 2003, Fireman's Fund agreed to such a renewal and underwrote and issued Excess Directors & Officers and Corporate Reimbursement Policy No. CXD-000-8581-1610 for the claims-made period effective from June 30, 2003 to June 30, 2004 (the "Fireman's Fund 03/04 Renewal Policy"). A true and correct copy of the Fireman's Fund 03/04 Excess Policy is attached hereto as Exhibit B (with the application proposal forms but without attachments to those forms).

**ANSWER:**

9

Defendants admit that Fireman's Fund issued to Bally an Excess Directors' and Officers' and Corporate Reimbursement Policy No. CXD-000-8581-1610 for the period June 30, 2003 to June 30, 2004 and that Fireman's Fund refer to this policy as the "Fireman's Fund 03/04 Renewal Policy." Defendants also admit that a copy of the "Fireman's Fund 02/03 Renewal Policy" was attached to Fireman's Fund pleading as Exhibit A.

33.     The Fireman's Fund 03/04 Renewal policy has an aggregate of liability of $10 million, excess of $30 million of underlying insurance provided by two other policies, specifically: (i) a $15,000,000 primary policy issued by National Union Fire Insurance Company of Pittsburgh, Pa. (the "National Union 03/04 Primary Policy"); and (ii) a $15,000,000 excess policy issued by XL Specialty Insurance Company (the "XL 03/04 Excess Policy").

**ANSWER:**

Defendants admit the allegations in paragraph 33.

34.     The Fireman's Fund 03/04 Renewal Policy, by its express terms, is subject to and incorporates and is subject to all of the terms and conditions of the National Union 03/04 Primary Policy. The National Union 03/04 Primary Policy contains the following relevant statements:

> In consideration of the payment of the premium, and in reliance upon the Application and the statements therein, which form part of this policy, the Insurer agrees as follows:
>
> "Application" means each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein and any other documents submitted in connection with the underwriting of this policy or the underwriting of any other directors and officers (or equivalent) liability policy issued by the Insurer, or any of its affiliates, of which this policy is a renewal, replacement or which it succeeds in time, and any public documents filed by an Organization with any federal, state, local or foreign regulatory agency (including but not limited to the Securities and Exchange Commission (SEC)) [*sic*].

**ANSWER:**

Defendants admit that paragraph 34 quotes a portion of the National Union 03/04 Primary Policy, and respectfully refer to the "Fireman's Fund 03/04 Renewal Policy" and the National Union 03/04 Primary Policy for a complete and accurate recitation of their terms and conditions. Defendants deny any remaining allegations in paragraph 34.

35.    To procure the National Union 03/04 Primary Policy, Bally a completed Directors and Officers Insurance Renewal Application Form, dated June 23, 2003 and signed by Toback (the "2003 Proposal Form"). The 2003 Proposal Form had been provided to Bally in blank by National Union in connection with its underwriting of the National Union 03/04 Primary Policy.

**ANSWER:**

Defendants answer that the Renewal Application Form is dated both June 26, 2003 and June 23, 2003 and admit that it was signed by Counterclaim Defendant Toback. Defendants lack sufficient knowledge and information to admit or deny the remaining allegations in paragraph 35, and therefore deny the same.

36.    The 2003 Proposal Form contained the following statements attesting to the accuracy of the information submitted in support of Bally's application for insurance coverage:

> The undersigned authorized officer of the applicant declares that the statements set forth herein are true. The undersigned authorized officer agrees that if the information supplied on this application changes between the date of this application and the effective date of the insurance, he/she (undersigned) will, in order for the information to be accurate on the effective date of the insurance, immediately notify the insurer of such changes, and the insurer may withdraw or modify outstanding quotations and/or authorizations or agreements to bind the insurance. Signing of the application does not bind the applicant or the insurer to complete the insurance, but it is agreed that this application shall be the basis of the contract should a policy be issued, and it will be attached to and become part of the policy. All written statements and materials furnished to the insurer in conjunction with this application are hereby incorporated by reference into this application and made a part hereof.

**ANSWER:**

Defendants admit that paragraph 36 quotes a portion of the 2003 Proposal Form, and respectfully refer to the 2003 Proposal Form for a complete and accurate recitation of the contents of that document. Defendants deny any remaining allegation in paragraph 36.

37.    The 2003 Proposal Form stated that copies of all of the following Bally documents were deemed attached to and made a part of it:

    i.    Latest annual report.

    ii.    Latest 10K report filed with the SEC (if the company is publicly traded.

    iii.      Latest interim financial statement available.

    iv.      All proxy statements and Notices of Annual Meeting of Stockholders within the last twelve months.

    v.      All registration statements filed with the SEC within the last twelve months (if the Company is Publicly traded).

    vi.      Copy (certified by Corporate Secretary) of the indemnification provisions of the charter and the by-laws. Also attach copy of any corporate indemnification provision.

    vii.      Latest CPA management letter along with applicant's response to any recommendations made therein.

**<u>ANSWER:</u>**

Defendants deny that the Proposal Form states that copies of the listed documents were "*deemed* attached to and made part of the Proposal Form." The Proposal Form states that each of the documents "*is* attached to and made part of the Proposal Form." However, no documents were in fact attached to the Proposal Form, as reflected by exhibits submitted with Fireman's Fund's Counterclaims, none of which include the referenced documents. Defendants deny any remaining allegations in paragraph 37.

38.    Bally declared in the 2003 Proposal Form that the statements in the 2003 Proposal Form, including all of the materials incorporated therein, were true and acknowledged that the application would be attached to and form a part of the National Union 03/04 Primary Policy.

**<u>ANSWER:</u>**

Defendants deny the allegations in paragraph 38.

39.    The Fireman's Fund 03/04 Renewal Policy also provides, at Paragraph I., that the Policy was issued in reliance upon statements in the Application and any materials submitted to Fireman's Fund, all of which are incorporated into and constitute part of the Fireman's Fund 03/04 Renewal Policy. Included in the materials submitted to Fireman's Fund was a completed application form that originally was submitted to GAIC, which, like the 2003 Proposal Form, expressly attached Bally's financial statements and verified the accuracy of such materials.

**<u>ANSWER:</u>**

Defendants admit that paragraph 39 paraphrases a portion of the "Fireman's Fund 03/04 Renewal Policy," and respectfully refer to the Policy for a complete and accurate recitation of the contents of that document. Defendants deny any remaining allegation in paragraph 39.

40. In reliance upon the truth of the representations made in the financial statements incorporated into Bally's applications, and in reliance upon all other documents and information provided by Bally, Fireman's Fund issued the Fireman's Fund 03/04 Renewal Policy.

**ANSWER:**

Defendants lack sufficient knowledge and information to admit or deny that Fireman's Fund issued the "Fireman's Fund 03/04 Renewal Policy" in reliance on the financial statements or any other documents to issue the "Fireman's Fund 03/04 Renewal Policy," and therefore deny the same. Defendants deny any remaining allegations in paragraph 40.

**Bally's Financial Misstatements**

41. As alleged in GAIC's Complaint, Bally materially misstated the true financial condition of Bally. Fireman's Fund adopts and incorporates GAIC's allegations set forth in Paragraphs 27 through 45 of its Complaint.

**ANSWER:**

Defendants deny the allegations in paragraph 41 and adopt and incorporate by reference Bally's Answers to paragraphs 27 through 45 of GAIC's Complaint.

42. Unbeknownst to Fireman's Fund, the financial statements incorporated into the insurance applications, upon which Fireman's Fund relied in issuing its policies, materially misstated Bally's true financial condition. Among other things, (i) Bally was required to restate its financials for the fiscal years 1999 through 2004, resulting in recognition of in excess of a billion dollar loss to stockholder equity; (ii) Bally has acknowledged that defendant Dwyer, who signed the 2002 Proposal Form, made a false and misleading statement to the SEC; and (iii) Bally publicly announced that Dwyer and other Bally executives engaged in overly aggressive accounting practices and/or did not have a reasonable basis for certain accounting determinations.

**ANSWER:**

Defendants deny that Bally's financial statements materially misstated its true financial condition. To the extent paragraph 42 purports to paraphrase Bally's financial statements, press

releases, or public announcements, Defendants respectfully refer to those documents for a complete and accurate recitation of their contents. Defendants deny any remaining allegations in paragraph 42.

43.     Bally's disclosures regarding its false financial statements commenced in early 2004. In a press release dated March 11, 2004, Bally announced that it had elected to change from its prior method of estimation-based deferral accounting "to a preferable, modified cash basis of accounting" for its membership revenues. In related measures, Bally announced that it had reduced the balance sheet carrying value of its deferred tax assets and corrected an error in its recognition of prepaid dues. Bally further announced that "the accounting change and these actions result in total non-cash charges of $675 million" consisting of (i) $581,000,000 reflecting the "cumulative effect as of the beginning of 2003 of the changes in accounting principles" (the "Cumulative Effect Adjustment"); (ii) $51,000,000 related to a special tax charge recorded effective the first quarter of 2003; and (iii) $43,000,000 as of December 31, 2002 reflected as a restatement resulting from the correction of an error related to the prior calculation of prepaid dues.

**ANSWER:**

Defendants admit that Bally issued a press release dated March 11, 2004. Defendants respectfully refer to the referenced press release for a complete and accurate recitation of the information and financial data paraphrased and partially quoted in paragraph 43. Defendants deny the remaining allegations in paragraph 43.

44.     In its Form 10-K for the year ended December 31, 2003, filed with the SEC on April 2, 2004, Bally reiterated the $581,000,000 Cumulative Effect Adjustment and the $51,000,000 special tax charge referenced in the preceding paragraph.

**ANSWER:**

Defendants admit that Bally filed a Form 10-K with the SEC on April 2, 2004 for the year ended December 31, 2003. Defendants respectfully refer to the referenced document for a complete and accurate recitation of the financial data summarized in paragraph 44. Defendants deny any remaining allegations in paragraph 44.

45.     In a press release dated April 28, 2004 Bally announced the resignation of defendant Dwyer without further explanation, and in the same press release announced that it was the subject of an investigation by the SEC (the "SEC Investigation"), stating that: "[T]he Division of Enforcement of the Securities and Exchange Commission has commenced an investigation in connection with the Company's recent restatement regarding the timing of recognition of prepaid dues. The Company is cooperating fully with the SEC in this matter."

**ANSWER:**

Defendants admit that Bally issued a press release dated April 28, 2004, concerning, among other things, the resignation of its then-Chief Financial Officer, John W. Dwyer. Defendants respectfully refer to the referenced press release for a complete and accurate recitation of the information paraphrased and partially quoted in paragraph 45. Defendants deny any remaining allegations in paragraph 45.

46.     On November 15, 2004, Bally announced in a press release that its Audit Committee had concluded, based on the results of an investigation, that Bally's financial statements for the years ended December 31, 2000 through December 31, 2003, and the first quarter of 2004, should be restated, and that, "[a]ccordingly, such financial statements and other communications related to such periods should no longer be relied upon." Among other things, the Audit Committee determined that, following the promulgation of Staff Accounting Bulletin No. 101, beginning in fiscal 2000, Bally "should have changed its revenue recognition policy for membership initiation fees" by adopting a policy of recognizing revenue for all membership fees "over the longer of the contractual life or the period over which service was provided." Bally announced that the restatement "will result in a cumulative, non-cash charge as of January 1, 2000, the amount of which has not yet been determined, but will include the amount previously reported as a cumulative effect adjustment when the Company converted to a modified cash basis of accounting effective January 1, 2003."

**ANSWER:**

Defendants admit that Bally issued a press release dated November 15, 2004, in which it announced, among other things, certain conclusions reached by its Audit Committee. Defendants respectfully refer to the referenced press release for a complete and accurate recitation of the information paraphrased and partially quoted in paragraph 46. Defendants deny any remaining allegations in paragraph 46.

47.     Bally acknowledged that its restatements would include the $581,000,000 Cumulative Effect Adjustment described above and would encompass Bally's financial statements for the fiscal years ending December 31, 2000 through December 31, 2003 and the first quarter of 2004.

**ANSWER:**

Defendants admit that Bally issued a press release dated November 15, 2004, in which it announced, among other things, certain conclusions reached by its Audit Committee.

Defendants respectfully refer to the referenced press release for a complete and accurate

recitation of the information and financial data paraphrased in paragraph 47.  Defendants deny

any remaining allegations in paragraph 47.

48.     In a press release dated February 8, 2005, Bally reiterated its earlier announcement that it
        would restate its financial statements from January 1, 2000 through the first quarter of
        2004. Bally further announced that its Audit Committee had completed its investigation
        into various accounting issues. Bally stated that it had reported the investigation results to
        the SEC and continued to cooperate with the SEC in its ongoing investigation of Bally. In
        particular, Bally announced that the Audit Committee investigation "found errors in the
        Company's rationale for and implementation of its deferral of membership acquisition
        costs" under Bally's prior accounting method. According to Bally, the Audit Committee
        investigation "also concluded that the Company took aggressively optimistic positions on
        several matters related to the analysis of the adequacy of the allowance for doubtful
        accounts, which were without a reasonable empirical basis."

**ANSWER:**

        Defendants admit that Bally issued a press release dated February 8, 2005.  Defendants

respectfully refer to the referenced press release for a complete and accurate recitation of the

information paraphrased and partially quoted in paragraph 48.  Defendants deny any remaining

allegations in paragraph 48.

49.     As also revealed in the February 8, 2005 press release, Bally's Audit Committee
        investigation found that "certain accounting policies and positions were suggested and
        implemented without a reasonable empirical basis and concluded that Mr. Dwyer made a
        false and misleading statement to the SEC." Bally announced that, as a result of these
        findings, the Company had decided "to make no further payments to Messrs. Hillman and
        Dwyer under their severance arrangements and will evaluate its legal options with respect
        to these former executives." In addition, Bally announced that the investigation found
        improper conduct by defendant Noncek, Bally's Vice President and Controller, and
        defendant Scheitlin, Bally's Vice President and Treasurer. As a result, Bally stated that it
        had terminated both Noncek and Scheitlin.

**ANSWER:**

        Defendants admit that Bally issued a press release dated February 8, 2005.  Defendants

respectfully refer to the referenced press release for a complete and accurate recitation of the

information paraphrased and partially quoted in paragraph 49. Defendants deny any remaining allegations in paragraph 49.

50.     In addition to the foregoing, in its February 8, 2005 press release Bally announced that its Audit Committee had found material weaknesses in Bally's internal control over financial reporting, including deficiencies in Bally's finance and accounting internal control environment. The Audit Committee also found material weaknesses including deficiencies in the controls surrounding the selection and application of accounting principles, including ineffective policies requiring contemporaneous documentation of factual support for key judgments applied within its financial reporting process and the retention of that documentation in accordance with a formal document retention policy.

**ANSWER:**

Defendants admit that Bally issued a press release dated February 8, 2005. Defendants respectfully refer to the referenced press release for a complete and accurate recitation of the information paraphrased in paragraph 50. Defendants deny any remaining allegations in paragraph 50.

51.     In a press release dated February 16, 2005, Bally announced that, following its recent disclosure of the results of its Audit Committee investigation, Bally had received a request for information from the office of the United States Attorney for the District of Columbia in connection with a criminal investigation it is conducting (the "DOJ Investigation"). In the same February 16, 2005 press release, Bally acknowledged receipt of a shareholder demand to bring actions or seek other remedies against parties responsible for the accounting errors that led to Bally's financial restatements (the "Shareholder Demand").

**ANSWER:**

Defendants admit that Bally issued a press release dated February 16, 2005. Defendants respectfully refer to the referenced press release for a complete and accurate recitation of the information paraphrased in paragraph 51. Defendants deny any remaining allegations in paragraph 51.

52.     On November 30, 2005, Bally restated its consolidated financial statements for 2000 through 2003. According to Bally, the restatement was necessary to correct improper accounting policies and practices in the following areas:

17

- revenue recognition;

- long-lived assets;

- goodwill and other intangible assets;

- leases;

- accrued liabilities;

- capitalized software development costs;

- insured obligations containing retained risk;

- transfers of obligatory member payments to third parties; and

- inventory valuation.

**ANSWER:**

Defendants admit that Bally filed its Form 10-K on November 30, 2005. Defendants respectfully refer to the referenced document for a complete and accurate recitation of the information paraphrased in paragraph 52. Defendants deny any remaining allegations in paragraph 52.

53. The restatement establishes that the financial information provided to Fireman's Fund in the underwriting of its policies grossly overstated Bally's financial condition. For example, in its original financial statement for 2001, Bally stated that it had generated operating income of $57.8 million. In fact, according to Bally's restated financials, during that time period, Bally had sustained an operating loss of $26.3 million - a difference of approximately $84 million.

**ANSWER:**

To the extent that paragraph 53 purports to paraphrase Bally's financial statements for 2001 or its November 30, 2005 Form 10-K, Defendants respectfully refer to those documents for a complete and accurate recitation of their contents. Defendants deny any remaining allegations in paragraph 53.

54. Likewise, in its original financial statement for 2002, Bally stated that it had an operating loss of $12.7 million and a net loss of $4.5 million. In fact, according to Bally's restated

financials, Bally's loss for that time period actually was considerably more, with an operating loss of $33.9 million and a net loss of $100.9 million.

**ANSWER:**

To the extent that paragraph 54 purports to paraphrase Bally's financial statements for 2002 or its November 30, 2005 Form 10-K, Defendants respectfully refer to those documents for a complete and accurate recitation of their contents. Defendants deny any remaining allegations in paragraph 54.

55. With respect to the restatement, Bally concedes that numerous directors and officers engaged in improper conduct that resulted in the material inaccuracies and misstatements in Bally's financial reports. Bally also acknowledges that, among the numerous deficiencies in its accounting practices, was a failure to establish effective controls to address the risk of management override in the financial reporting process, meaning Bally's management had the ability to improperly manipulate financial results.

**ANSWER:**

Defendants admit that Bally filed a Form 10-K on November 30, 2005. To the extent that paragraph 55 purports to paraphrase Bally's November 30, 2005 Form 10-K, Defendants respectfully refer to that document for a complete and accurate recitation of its contents. Defendants deny any remaining allegations in paragraph 55.

56. Bally's faulty and improper accounting practices have been the focus of investigations by the SEC and the Department of Justice ("DOJ").

**ANSWER:**

Defendants admit that the SEC and DOJ initiated investigations of certain aspects of Bally's accounting practices. Defendants deny the remaining allegations in paragraph 56.

**Bally Matters**

57. Due in large part to the problems in Bally's financial reporting, Bally, Holiday, and the Individual Insureds have been named as a defendant in one or more lawsuits or have become the subject of certain other claims or potential claims, including, without limitation:

    i) *In re Bally Total Fitness Sec. Litig.*, No. 04 C 3530 (N.D. Ill. 2004);

    ii) *Levine v. Bally Total Fitness Holding Corp., et al.*, No. 06 C 1437 (N.D. Ill. 2006);

iii)    *Levine v. Bally Total Fitness Holding Corp., et al.*, Case No. 2007 L 004280 (Cook Co. Cir. Ct. 2007);

iv)    *Berra, et al. v. Toback, et al.,* No. 04 CH 09132 (Cook Co. Cir. Ct. 2004).

v)    *Schachter, et al. v. Toback, et al.,* No. 04 CH 09131 (Cook Co. Cir. Ct. 2004);

vi)    *Said, et al. v. Toback, et al.*, No. 05 C 1981 (N.D. Ill. 2005);

vii)    *Garrison, et al. v. Bally Total Fitness Holding Corp., et al.*, CV 04 1331 (D. Ore. 2004);

viii)    *Fit Tech Inc., et al. v. Bally Total Fitness Holding Corp.,* Nos. 03-CV-10295 (D. Mass. 2003) and 05-CV-10471 MEL (D. Mass. 2005);

ix)    *Butcher v. Bally Total Fitness Corporation, et al.,* Case No. CV 02 458434 (Ct. of Comm. Pleas of Cuyahoga Co. Ohio 2002) and related arbitration;

x)    an investigation by the Securities and Exchange Commission, in which the SEC issued a formal Order Directing Private Investigation and Designating Officers to Take to Take Testimony on May 27, 2004;

xi)    an investigation by the United States Attorney for the District of Columbia; and

xii)    a demand made by certain shareholders upon Bally to bring actions or seek remedies against other parties alleged to be responsible for accounting errors in connection with Bally's financial statements.

**ANSWER:**

Defendants admit that Bally and certain of its officers and directors were named as defendants in a group of securities class actions that were eventually consolidated under Case No. 04 C 3530.

Defendants admit that Bally and certain of its current and former officers and directors were named as defendants in a shareholder action entitled *Levine v. Bally Total Fitness Holding Corporation, et al.*, Case No. 2007 L 004280.

Defendants admit that Bally and certain of its current and former officers and directors were also named as defendants in a case entitled *Levine v. Bally Total Fitness Holding Corp., et al.*, Case No. 06 C 1437 in the Northern District of Illinois.

Defendants admit that Bally and certain of its current and former officers and directors were named as defendants in three separate shareholder derivative actions with the captions and case numbers referenced in paragraph 57(iv)-(vi).

Defendants admit that Bally and certain of its current and former officers and directors were named as defendants in an action in the United States District Court for the Northern District of Oregon entitled *Garrison et al. v. Bally Total Fitness Holding Corp., et al.*, No. CV04 1331.

Defendants admit that Bally and certain of its current and former officers and directors were named as defendants in an action in the United States District Court for the District of Massachusetts, entitled *Fit Tech, Inc., et al. v. Bally Total Fitness Holding Corp., et al.*, and a separate action by the same caption with the case number 05-CV-10471 MEL, which was also filed in the United States District Court for the District of Massachusetts.

Defendants admit that Bally and certain of its current and former officers and directors were named as defendants in an action entitled *Butcher v. Bally Total Fitness Corporation, et al.*, Case No. CV 02 458434.

Defendants admit that the SEC and DOJ initiated investigations of certain aspects of Bally's accounting practices and that Bally received a shareholder demand. Defendants further answer that, with regard to the shareholder demand, Bally's board of directors appointed an independent special committee to evaluate the allegations made in the demand and the derivative action described in paragraph 57. Subsequently, Bally's board of directors adopted the special committee's recommendation that it was not in the company's best interest to take any action on the demand at this time. Defendants deny any and all remaining allegations in paragraph 57.

58.     Bally has sought coverage for some or all of the Bally Matters from Fireman's Fund under the Fireman's Fund 02/03 Excess Policy and/or the Fireman's Fund 03/04 Renewal Policy. Fireman's Fund has reserved all of its rights under the 02/03 Excess Policy, the 03/04 Renewal Policy, and applicable law. In this action, in Counts III through V below, Fireman's Fund seeks a judicial declaration, in the alternative to rescission, only as to those policy terms the applicability of which actually can be decided at this time. Fireman's Fund continues to reserves all of its rights under the subject insurance policies and does not waive its rights as to policy terms not raised in this Complaint.

**ANSWER:**

Defendants admit that Bally provided Fireman's Fund with a notice of circumstances on June 26, 2003 and has kept Fireman's Fund apprised of the Bally Matters since, but states that

the Fireman's Fund 02/03 Excess Policy and the "Fireman's Fund 03/04 Renewal Policy" have

not yet been triggered. Defendants deny the remaining allegations in paragraph 58.

## COUNT I

## DECLARATORY JUDGMENT RESCINDING
## THE FIREMAN'S FUND 02/03 EXCESS POLICY

59.    Fireman's Fund repeats and incorporates reference the allegations in Paragraphs 1
       through 58.

**ANSWER**:

       Defendants incorporate by reference their Answers to paragraphs 1 through 58 as their

Answer to paragraph 59 of the Complaint.

60.    The application materials submitted to procure the Fireman's Fund 02/03 Excess Policy,
       including Bally's financial statements, contained material misrepresentations or false
       warranties that materially affected the acceptance of the risk or the hazard assumed by
       Fireman's Fund.

**ANSWER**:

       Defendants deny the allegations in paragraph 60.

61.    Fireman's Fund did not know that the application materials contained false information,
       and relied upon the truth of such information in underwriting and issuing the Fireman's
       Fund 02/03 Excess Policy.

**ANSWER**:

       Defendants lack sufficient knowledge and information to admit or deny the allegations in

paragraph 61, and therefore deny the same.

62.    Had Fireman's Fund known that the application materials false information, and had it
       known the truth about Bally's financial condition, it would not have issued the Fireman's
       Fund 02/03 Excess Policy.

**ANSWER**:

       Defendants lack sufficient knowledge and information to admit or deny that Fireman's

Fund would not have issued the Fireman's Fund 02/03 Excess Policy had Bally's financial

statements contained different information, and therefore deny the same. Defendants deny any

remaining allegations in paragraph 62.

63. The Fireman's Fund 02/03 Excess Policy is therefore void *ab initio*, and Fireman's Fund is entitled to a declaration, pursuant to 28 U.S.C. §2201, that such policy is rescinded and of no force or effect.

**ANSWER:**

Defendants deny that any basis exists to declare the Policy void *ab initio* or rescinded.

Defendants deny the remaining allegations in paragraph 63.

## COUNT II

### DECLARATORY JUDGMENT RESCINDING
### THE FIREMAN'S FUND 03/04 RENEWAL POLICY

64. Fireman's Fund repeats and incorporates by reference the allegations in Paragraphs 1 through 63.

**ANSWER:**

Defendants incorporate by reference their Answers to paragraphs 1 through 63 as their

Answer to paragraph 64 of the Complaint.

65. The application materials submitted to procure the Fireman's Fund 03/04 Renewal Policy, including Bally's financial statements, contained misrepresentations or false warranties that materially affected the acceptance of the risk or the hazard assumed by Fireman's Fund.

**ANSWER:**

Defendants deny the allegations in paragraph 65.

66. Fireman's Fund did not know that the application materials contained false information, and it relied upon the truth of such information in underwriting and issuing the Fireman's Fund 03/04 Renewal Policy.

**ANSWER:**

Defendants lack sufficient knowledge and information to admit or deny the allegations in

paragraph 66, and therefore deny the same.

67. Had Fireman's Fund known that the application materials contained false information, and had it known the truth about Bally's financial condition, it would not have issued the Fireman's Fund 03/04 Renewal Policy.

**ANSWER:**

Defendants lack sufficient knowledge and information to admit or deny that Fireman's Fund would not have issued the Policy had Bally's financial statements contained different information, and therefore deny the same. Defendants deny any remaining allegations in paragraph 67.

68. The Fireman's Fund 03/04 Renewal Policy is therefore void *ab initio,* and Fireman's Fund is entitled to a declaration, pursuant to 28 U.S.C. §2201, that such policy is rescinded and of no force or effect.

**ANSWER:**

Defendants deny that any basis exists to declare the Policy void *ab initio* or rescinded. Defendants deny the remaining allegations in paragraph 68.

## COUNT III

### DECLARATORY JUDGMENT REGARDING COVERAGE UNDER THE FIREMAN'S FUND 03/04 RENEWAL POLICY (Prior Notice Exclusion)

69. Fireman's Fund repeats and incorporates by reference the allegations in Paragraphs 1 through 68.

**ANSWER:**

Defendants incorporate by reference their Answers to paragraphs 1 through 68 as their Answer to paragraph 69 of the Complaint.

70. The Fireman's Fund 03/04 Renewal Policy is subject both to its own terms and conditions and to all of the terms, conditions, exclusions, and limitations of the National Union 03/04 Primary Policy.

**ANSWER:**

Bally states that paragraph 70 contains a legal conclusion to which no answer is required. To the extent an answer is required, Defendants respectfully refer to the "Fireman's Fund 03/04 Renewal Policy" and the National Union 03/04 Primary Policy for a complete and accurate

recitation of their terms and conditions.  Defendants deny any and all remaining allegations in

paragraph 70.

71.     The Fireman's Fund 03/04 Renewal Policy contains the following exclusion:

> In consideration of the payment of premium, it is hereby understood and agreed
> that the Insurer shall not be liable to make any payment for Loss in connection
> with any Claim made against any of the Insureds based upon, arising out of,
> directly or indirectly resulting from, in consequence of, or in any way involving
> any fact, circumstance or situation which has been the subject of any notice given
> under any other policy of which this Policy is a renewal or replacement.

**ANSWER:**

Defendants admit that paragraph 71 quotes a portion of the "Fireman's Fund 03/04

Renewal Policy," and respectfully refer to the Policy for a complete and accurate recitation of its

terms and conditions.  Defendants deny any remaining allegation in paragraph 71.

72.     Fireman's Fund has been given notice of the Bally Matters under the Fireman's Fund
        02/03 Excess Policy, of which the Fireman's Fund 03/04 Renewal Policy is a renewal or
        replacement.

**ANSWER:**

Defendants admit that Bally provided Fireman's Fund with a notice of certain Bally

Matters under the Fireman's Fund 02/03 Excess Policy.  Defendants respectfully refer to the

notice letters for the complete and accurate recitation of the contents of such notice.  Defendants

deny any remaining allegations in paragraph 72.

73.     By reason of the foregoing, there is no coverage for any of the Bally Matters under the
        Fireman's Fund 03/04 Renewal Policy, and, in the alternative to rescission, Fireman's
        Fund is entitled to a declaration, pursuant to 28 U.S.C. §2201, to this effect.

**ANSWER:**

Defendants deny that any grounds exist for barring coverage for the Bally Matters or for

rescinding the "Fireman's Fund 03/04 Renewal Policy."  Defendants deny the remaining

allegations in paragraph 73.

## COUNT IV

### DECLARATORY JUDGMENT REGARDING COVERAGE
### UNDER THE FIREMAN'S FUND 03/04 RENEWAL POLICY AGAINST
### (Prior Acts Exclusion)

74.     Fireman's Fund repeats and incorporates by reference the allegations in Paragraphs 1 through 73 of this Counterclaim.

**ANSWER:**

Defendants incorporate by reference their Answers to paragraphs 1 through 73 as their

Answer to paragraph 74 of the Complaint.

75.     The Fireman's Fund 03/04 Renewal Policy contains the following exclusion:

In consideration of the payment of premium, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for loss in connection with any Claim made against any of the Insureds for, based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any Wrongful Act(s), including Related Wrongful Acts, actually or allegedly committed or attempted in whole or part prior to 06-30-2003.  Related Wrongful Acts means Wrongful Acts that arise out of, are based on, relate to or are in consequence of, the same facts, circumstances or situations.

**ANSWER:**

Defendants admit that paragraph 75 quotes a portion of the "Fireman's Fund 03/04

Renewal Policy," and respectfully refer to that Policy for a complete and accurate recitation of its

terms and conditions.  Defendants deny any remaining allegation in paragraph 75.

76.     The Bally Matters allege Wrongful Acts and/or Related Wrongful Acts (as those terms are defined) actually or allegedly committed or attempted in whole or in part prior to 06-30-2003.

**ANSWER:**

Defendants deny the allegations in paragraph 76.

77.     By reason of the foregoing, there is no coverage for any of the Bally Matters under the Fireman's Fund 03/04 Renewal Policy, and, in the alternative to rescission, Fireman's Fund is entitled to a declaration, pursuant to 28 U.S.C. §2210, to this effect.

**ANSWER:**

Defendants deny that there is any basis for barring coverage of the Bally Matters or for rescinding the "Fireman's Fund 03/04 Renewal Policy." Defendants deny the remaining allegations in paragraph 77.

## COUNT V

### DECLARATORY JUDGMENT REGARDING COVERAGE UNDER THE FIREMAN'S FUND 03/04 RENEWAL POLICY AGAINST (Late Notice)

78. Fireman's Fund repeats and incorporates by reference the allegations in Paragraphs 1 through 77 of this Counterclaim.

**ANSWER:**

Defendants incorporate by reference their Answers to paragraphs 1 through 77 as their Answer to paragraph 78 of the Complaint.

79. The Fireman's 03/04 Renewal Policy contains the following condition:

It is a condition to the Insurer's obligations under this Policy that:

(1) The Insured company shall give written notice to the Insurer of any claim made against any Insured during the Policy Period or during any applicable Discovery Period in accordance with the notice/claims reporting conditions of the Underlying Insurance. Notice given under the Underlying Insurance shall not constitute notice under this Policy.

**ANSWER:**

Defendants admit that paragraph 79 quotes a portion of the "Fireman's Fund 03/04 Renewal Policy," and respectfully refer to the Policy for a complete and accurate recitation of its terms and conditions. Defendants deny any remaining allegation in paragraph 79.

80. The National Union 03/04 Primary Policy, to whose terms the Fireman's Fund 03/04 Renewal Policy is subject, provides as follows:

(a) An Organization or an Insured shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of a Claim made against and Insured or a Crisis as soon as practicable: (i) after the Named Entity's Risk Manager or General Counsel (or equivalent position) first becomes aware of the Claim, or (ii) the Crisis Commences, but in all events no later than either:

(1) the end of the Policy Period or the Discovery Period (if applicable); or

(2) within 30 days after the end of the Policy Period or the Discovery period (if applicable, as long as such claim was first made against an Insured within the final 30 days of the Policy Period or the Discovery Period (if applicable).

**ANSWER:**

Defendants admit that paragraph 80 quotes a portion of the Nation Union 03/04 Primary Policy, and respectfully refer to that policy for a complete and accurate recitation of its terms and conditions. Defendants deny any remaining allegation in paragraph 80.

81. Written notice of certain of the Bally Matters was not provided to Fireman's Fund until more than 30 days after the expiration of the Fireman's Fund 03/04 Renewal Policy.

**ANSWER:**

Defendants admit that Bally provided Fireman's Fund with a notice of circumstances on June 26, 2003 and has kept Fireman's Fund apprised of the Bally Matters since. Defendants deny the remaining allegations in paragraph 81.

82. To the extent that notice of the Bally Matters was not given to Fireman's Fund until more than 30 days after the expiration of the Fireman's Fund 03/04 Renewal Policy, there is no coverage under the Fireman's Fund 03/04 Renewal Policy for such matters and, in the alternative to rescission, Fireman's Fund is entitled to a declaration, pursuant to 28 U.S.C. §2210, to this effect.

**ANSWER:**

Defendants deny that there is any basis for barring coverage for the Bally Matters. Defendants deny the remaining allegations in paragraph 82.

WHEREFORE, Fireman's Fund demands judgment in its favor and against each of the Counterclaim Defendants as follows:

A. On Count I declaring that the Fireman's Fund 02/03 Excess Policy is void *ab initio*, rescinded, and of no force or effect;

B. On Count II declaring that the Fireman's Fund 03/04 Renewal Policy is void *ab initio*, rescinded, and of no force or effect;

C. On Count III, in the alternative to rescission, declaring that, pursuant to the Prior Notice Exclusion, no coverage exists under the Fireman's Fund 03/04 Renewal Policy for any of the Bally Matters;

D.  On Count IV, in the alternative to rescission, declaring that, pursuant to the Prior Acts Exclusion, no coverage exists under the Fireman's Fund 03/04 Renewal Policy for any of the Bally Matters;

E.  On Count V, in the alternative to rescission, declaring that, because of late notice, no coverage exists under the Fireman's Fund 03/04 Renewal Policy for any of the Bally Matters for which Fireman's Fund was not given notice until ore than 30 days after the expiration of the Fireman's Fund 03/04 Renewal Policy;

F.  Awarding Fireman's Fund its costs and reasonable attorneys' fees in connection with this action; and

G.  Granting Fireman's Fund such other and further relief as the Court may deem proper.

**ANSWER:**

Defendants deny that there is any basis to entitle Fireman's Fund to the relief requested.

## **AFFIRMATIVE DEFENSE**

Plaintiff's Counts III, IV, and V cannot be maintained because there is no federal subject matter jurisdiction for those claims against the Individual Defendants.

Dated:  January 4, 2008                                 Respectfully submitted,


            /s/  William T. Pruitt

Michael P. Foradas, P.C.
Nader R. Boulos
William T. Pruitt
Tiffany L. Sorge Smith
Kirkland & Ellis, LLP
200 East Randolph
Chicago, Illinois  60601
Ph.: (312) 861-2000
Fax:  (312) 861-2200

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of January, 2008, I did cause a true and correct copy of the foregoing DEFENDANTS' CONSOLIDATED ANSWER AND INDIVIDUAL DEFENDANTS' AFFIRMATIVE DEFENSE TO THE COUNTERCLAIMS OF THIRD-PARTY DEFENDANT AND COUNTER-PLAINTIFF FIREMAN'S FUND INSURANCE COMPANY to be served upon the following:

_____/s/   William T. Pruitt_____
William T. Pruitt

| | |
|---|---|
| Leonard S. Surdyk<br>Robert B. Baker<br>SURDYK & BAKER<br>225 West Washington, Suite 2200<br>Chicago, IL 60606<br>**Via Electronic Mail** | Edward P. Gibbons<br>Christopher A. Wadley<br>Neil E. Holman<br>WALKER WILCOX MATOUSEK LLP<br>225 W. Washington Street, Suite 2400<br>Chicago, IL 60606<br>**Via Electronic Mail** |
| **Counsel for Great American Insurance Company** | **Counsel for ACE American Insurance Co.** |
| David M. Goldhaber<br>David K. Subramanian<br>SEDGWICK, DETERT, MORAN & ARNOLD LLP<br>One North Wacker Drive, Suite 4200<br>Chicago, IL 60606<br>**Via Electronic Mail** | James Walsh (**Via Electronic Mail**)<br>Gregg D. Minkin (**Via UPS**)<br>LONDON FISCHER LLP<br>59 Maiden Lane<br>New York, NY 10038<br>**Via Electronic Mail** |
| Michael R. Davisson<br>Susan K. Sullivan<br>SEDGWICK, DETERT, MORAN & ARNOLD LLP<br>801 S. Figueroa Street, 19th Floor<br>Los Angeles, CA 90017<br>**Via UPS** | Kevin O'Hagan<br>Kristine S. Phillips<br>Luke P. Sheridan<br>O'HAGAN SPENCER LLC<br>55 W. Wacker Drive, Suite 1400<br>Chicago, IL 60601<br>**Via Electronic Mail** |
| **Counsel for RLI Insurance Co.** | **Counsel for Travelers Indemnity Co.** |
| James R. Murray<br>Thomas K. Hanekamp<br>TRESSLER, SODERSTROM, MALONEY &<br>PROESS, LLP<br>233 S. Wacker Drive<br>22nd Floor - Sears Tower<br>Chicago, IL 60606<br>**Via Electronic Mail** | |
| **Counsel for Fireman's Fund Insurance Co.** | |