# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY, an Ohio Corporation, | ) ) ) |
| Plaintiff, | ) **No. 06 C 4554** |
| v. | ) ) **Wayne R. Andersen** |
| BALLY TOTAL FITNESS HOLDING CORPORATION, | ) **District Judge** ) ) |
| Defendant and Third-Party Plaintiff, | ) ) |
| v. | ) ) |
| RLI INSURANCE COMPANY; TRAVELERS INDEMNITY COMPANY (as successor-in-interest by merger to Gulf Insurance Company); FIREMAN'S FUND INSURANCE COMPANY; and ACE AMERICAN INSURANCE COMPANY, Third-Party Defendants. | ) ) ) ) ) ) ) ) ) |
| ACE AMERICAN INSURANCE COMPANY, | ) ) |
| Third-Party Defendant and Counterclaimant, | ) ) |
| v. | ) ) |
| GEORGE N. ARONOFF; PAUL TOBACK; JOHN H. DWYER; LEE S. HILLMAN; STEPHEN C. SWID; JAMES McANALLY; J. KENNETH LOOLOIAN; LIZA M. WALSH; ANNIE P. LEWIS, as Executor of the Estate of AUBREY C. LEWIS, Deceased; THEODORE NONCEK; GEOFF SCHEITLIN; JOHN H. WILDMAN; JOHN W. ROGERS, JR.; and MARTIN E. FRANKLIN, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Additional Defendants on Counterclaim. | ) ) |

# MEMORANDUM OPINION and ORDER

This matter is before the Court on cross motions for summary judgment [224, 234, 235]. Pursuant to 28 U.S.C. § 2201, both parties seek a judicial declaration regarding the contractual interpretation of certain excess insurance policies and the conditions precedent to coverage defined within those policies. Specifically, Defendants Bally Total Fitness Holding Corp. ("Bally"), Lee Hillman, Paul Toback, and John Dwyer (collectively referred to herein as "Insureds") seek a judicial declaration "confirming their entitlement to coverage under two policies of excess directors' and officers' liability insurance, issued by Third Party Defendants ACE American Insurance Company and Fireman's Fund Insurance Company, for the array of claims asserted against them and others alleging violations of securities law stemming from Bally's financial restatements." Docket No. 224. In opposition, Third Party Defendants ACE and Fireman's Fund seek a judicial declaration that Insureds' below policy limits settlement with certain other excess insurance carriers, no longer parties to this case, does not satisfy the conditions precedent to coverage defined within the excess insurance policies issued by Third Party Defendants. Docket Nos. 234, 235.

The following clause from the excess insurance policy issued by ACE ("Third Layer Excess Carrier") defines conditions precedent to coverage:

> It is expressly agreed that liability for any covered Loss shall attach to the Insurer only after the insurers of the Underlying Policies shall have paid, in the applicable legal currency, the full amount of the Underlying Limit and the Insureds shall have paid the full amount of the uninsured retention, if any, applicable to the primary Underlying Policy.

Similarly, the excess insurance policy issued by Fireman's Fund ("Fourth Layer Excess Carrier") contains the following clause defining conditions precedent to coverage:

> The insurance coverage afforded by the Policy shall apply (1) only in excess of all Underlying Insurance and (2) only after all Underlying Insurance has been exhausted by payment of the total underlying limit of insurance and (3) only if each and every Underlying Insurance Policy has responded by payment of loss as a result of any wrongful act.

Additionally, the policy clarifies "Exhaustion Of Underlying Insurance" as follows:

> In the event of exhaustion of all of the limits of insurance of the Underlying Insurance solely as a result of actual payment of loss or losses thereunder, this Policy shall, subject to the Limit of Insurance, terms and conditions of this Policy, apply as Primary Insurance subject to any retention specified in the Primary Policy.

For the following reasons, the Court denies Insureds' motion for summary judgment and grants Third Party Defendants' motion for summary judgment.

## BACKGROUND

Bally is a Delaware Corporation with its principal place of business in Chicago, Illinois and operates fitness centers throughout the United States. Lee Hillman and Paul Toback are Bally's former Chief Executive Officers. John Dwyer is Bally's former Chief Financial Officer.

Insureds have allegedly incurred $33 million in legal costs defending suits arising from Bally's past financial restatements. To cover the alleged legal costs, Insureds sought coverage from their primary directors' and officers' insurance carrier and four excess insurance carriers.

Great American Insurance Company ("Primary Carrier") issued the Primary Policy with a policy limit of $10 million. RLI ("First Layer Excess Carrier") issued the first layer excess directors' and officers' liability insurance policy ("First Layer Excess Policy") with a policy limit of $10 million for claims in excess of $10 million. In other words, the First Layer Excess Carrier is responsible for covered claims between $10 million and $20 million. Gulf ("Second Layer Excess Carrier") issued the second layer excess directors' and officers' liability insurance policy ("Second Layer Excess Policy") with a policy limit of $10 million for claims in excess of

$20 million. Third Party Defendant ACE ("Third Layer Excess Carrier") issued the third layer excess directors' and officers' liability insurance policy ("Third Layer Excess Policy") with a policy limit of $10 million for claims in excess of $30 million. Finally, Third Party Defendant Fireman's Fund Insurance Company ("Fourth Layer Excess Carrier") issued the fourth layer excess directors' and officers' liability insurance policy ("Fourth Layer Excess Policy") with a policy limit of $10 million for claims in excess of $40 million.

After initially filing this suit to invalidate coverage, the Primary Carrier and the First and Second Layer Excess Carriers agreed to contribute $19.5 million towards Insureds' alleged legal costs ("The Settlement"). Most notably, the First Layer Excess Carrier settled with Insureds for $8 million, $2 million less than the policy limit of the First Layer Excess Policy. The Second Layer Excess Carrier settled with Insureds for $1.5 million, $8.5 million less than the policy limit of the Second Layer Excess Policy. In accordance with The Settlement's Voluntary Stipulation of Partial Dismissal, this Court dismissed with prejudice the claims and counter-claims between Insureds and the Primary Carrier and First and Second Layer Excess Carriers. Additionally, The Settlement released the Primary Carrier and the First and Second Layer Excess Carriers from any further coverage obligations.

The Third and Fourth Layer Excess Carriers refused to settle and contribute anything towards Insureds' alleged legal costs. These carriers claim that they are only liable for coverage after the First and Second Layer Excess Carriers have made payment of covered claims equal to the policy limits of the First and Second Layer Excess Policies. Insureds, on the other hand, claim the Third and Fourth Layer Excess Carriers contracted with the Insureds to cover claims above $30 million irrespective of who makes payment for claims below $30 million. Thus,

Insureds claim the Third and Fourth Layer Excess Carriers are still liable for coverage above $30 million.

In response to this disagreement, the Court ordered the parties to brief the following single issue: Does The Settlement preclude Insureds from accessing coverage under the Third and Fourth Layer Excess Policies? Docket No. 229. Each party submitted briefs requesting declaratory judgment clarifying the parties' contractual rights with regards to this issue. Docket Nos. 224, 234, 235. This Court will treat each party's request for judgment as a motion for summary judgment despite not being explicitly titled as such.

For the reasons stated below, this Court agrees with the Third and Fourth Layer Excess Carriers. The plain language of the Third and Fourth Layer Excess Policies requires that the First and Second Layer Excess Carriers make actual payments of $10 million each in covered claims before Insureds can access coverage provided by the Third and Fourth Layer Excess Policies.

## LEGAL STANDARD

Under 28 U.S.C. § 2201, this Court has the authority to "declare the rights and other legal relations of any interested party" who presents "a case of actual controversy." The issues presented in the Defendants' motion for a declaratory judgment are all questions regarding the parties' contractual rights and therefore, can be addressed in a declaratory judgment. In addition, summary judgment is appropriate when, as in this case, there are no disputed issues of material fact and judgment may be entered as a matter of law. See Fed. R. Civ. P. 56. The interpretation of an insurance contract is a question of law to be decided by the court. *Zurich Ins. Co. v. Heil Co.*, 815 F.2d 1122 (7th Cir. 1987).

5

**DISCUSSION**

Illinois law of contract interpretation provides that the words of an insurance policy should be "given their plain and ordinary meaning." *Hudson Insurance Company, v. Gelman Sciences, Inc.*, 921 F.2d 92, 94 (7th Cir. 1990). When interpreting an insurance contract, a court must read all of the provisions together, as opposed to reading them in isolation, to determine whether an ambiguity exists. *Id*. A provision is ambiguous if it is subject to more than one reasonable interpretation and in such instances, the provision is interpreted in favor of the insured and against the insurer. *United States Fire Insurance Company v. Schnackenberg et al.*, 429 N.E.2d 1203, 1205 (Ill. 1981). "However, if the provisions of the insurance policy are clear and unambiguous there is no need for construction and the provisions will be applied as written." *Id*.

Insureds insist the Third and Fourth Layer Excess Policies are ambiguous as to whether the First and Second Layer Excess Carriers must make actual payments of $10 million each in covered claims prior to Insureds accessing coverage under the Third and Fourth Layer Excess Policies. Insureds claim the Third and Fourth Layer Excess Carriers contracted with the Insureds to cover claims in excess of $30 million and the risk insured by the Third and Fourth Excess Policies is the same regardless of who makes payment for covered claims under $30 million. Thus, Insureds maintain this Court should declare that Insureds can still access coverage under the Third and Fourth Layer Excess Policies.

Insureds base their argument on *Zeig v. Mass. Bonding & Ins. Co.*, 23 F.2d 665 (2d Cir. 1928) and subsequent case law. In *Zeig*, plaintiff sought coverage under plaintiff's primary and excess insurance policies for an array of unspecified claims. *Id*. Plaintiff settled with the primary carriers for $6,000, $7,000 less than the policy limit. *Id*. Plaintiff then brought suit

against the excess carrier, the defendant, seeking coverage for claims in excess of $15,000. *Id.* The plaintiff's excess insurance policy contained the following clause:

> [This] policy is issued and accepted: As excess and not contributing insurance, and shall apply and cover only after all other insurance herein referred to shall have been exhausted in payment of claims to the full amount of the expressed limits of such other insurance.

The defendant claimed the above clause required the primary insurance carriers to make actual payments equal to the full policy limits of the primary insurance policies prior to the plaintiff seeking coverage under the excess insurance policy. *Id.* at 666. However, the Second Circuit found the phase "payment of claims to the full amount of the expressed limits" ambiguous. *Id.* "[P]ayment", according to the Second Circuit, could refer to actual payment or "satisfaction of a claim by compromise, or in other ways." *Id.* Additionally, the Second Circuit was troubled by the policy's failure to mention "'collection' of the full amount of the primary insurance." *Id.* Thus, the Second Circuit found the clause quoted above ambiguous and held that plaintiff's excess insurance carrier was still liable for coverage despite plaintiff's settlement with the underlying insurance carriers. *Id.*

Cases following *Zeig's* line of reasoning typically examine whether an excess insurance policy clearly defines how the underlying policies must be exhausted. *See Comerica v. Zurich American Ins. Co.*, 498 F.Supp.2d 1019, 1030 (E.D. Mich. 2007) (listing the various cases following *Zeig's* line of reasoning). Generally, an excess insurance policy defines exhaustion of an underlying policy by declaring the conditions precedent to coverage that must be satisfied prior to liability for covered claims passing from an underlying insurance policy to an excess insurance policy. *Id.* Once liability has passed to the excess policy and the underlying policies

7

no longer have any obligations to make payment for covered claims, the underlying policies are considered exhausted. *Id*.

If an excess insurance policy ambiguously defines exhaustion, as in *Zeig*, courts generally find that settlement with an underlying insurer exhausts the underlying policies. *Id*. However, in cases when the policy language clearly defines exhaustion, the courts tend to enforce the policy as written. *Id*. Even the Second Circuit in *Zeig* noted that parties are free to clearly define how an underlying policy must be exhausted and can preclude settlement as a method of exhaustion. 23 F.2d at 666.

In this case, the Third Layer Excess Policy clearly defines how the underlining insurance must be exhausted prior to Insureds accessing coverage under the Third Layer Excess Policy. The policy defines the method of exhaustion as actual payment by the "insurers of the Underlying Policies." The policy defines the "Underlying Policies" as the Primary Policy and the First and Second Layer Excess Policies. The payment amount is "the full amount of the Underlying Limit" and is specifically defined as the combined aggregate of the underlying policy limits (i.e. $30 million). Unlike the policy language in *Zeig*, the Third Layer Excess Policy's plain language is not ambiguous regarding the manner in which the underlying insurance policies must be exhausted. Thus, this Court, in accordance with well-established Illinois law, must enforce the plain language as written. *Hudson Insurance Co.*, 921 F.2d at 94.

Similarly, the Fourth Layer Excess Policy contains clear language specifying how the First, Second, and Third Layer Excess Policies must be exhausted prior to Insureds accessing coverage under the Fourth Layer Excess Policy. Again, the policy defines the method of exhaustion as the "actual payment of loss or losses thereunder" by "all Underlying Insurance." The policy defines "Underlying Insurance" explicitly as the Primary Policy and the First,

Second, and Third Layer Excess Policies. The payment amount is the "total underlying limit of insurance" and is explicitly defined as the combined aggregate policy limits of the Primary Policy plus the First, Second, and Third Excess Layer Policies (i.e. $40 million). Again, unlike the policy language in *Zeig*, the Fourth Layer Excess Policy's plain language is not ambiguous regarding the manner in which the underlying insurance policies must be exhausted. Thus, this court must enforce the policy as written. *Hudson Insurance Co.*, 921 F.2d at 94.

## DECLARATION

This Court holds that the Third Layer Excess Policy requires that the Primary Carrier and the First and Second Layer Excess Carriers themselves must make actual payment of $10 million each for covered claims, pursuant to the Primary Policy and the First and Second Layer Excess Policies, prior to Insureds accessing coverage provided by the Third Layer Excess Policy.

Also, this Court holds that the Fourth Layer Excess Policy requires that the Primary Carrier and the First, Second, and Third Layer Excess Carriers themselves must make actual payment of $10 million each for covered claims, pursuant to the Primary Policy and the First, Second, and Third Excess Layer Policies, prior to Insureds accessing coverage provided by the Fourth Layer Excess Policy.

## CONCLUSION

For all the foregoing reasons, the Insureds' motion for summary judgment is denied

[224] and the Third Party Defendants' motion for summary judgment is granted [234, 235].

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: June 22, 2010